CLARA SPIEGEL v. WILLIAM J. SPIEGEL, DOROTHEA SPIEGEL, AND GEORGE OLDEKOPFF.

*Homestead* [1]—*Procuring deed from wife by fraud—Relief in equity.*

Where a husband induced his wife to sign a deed of their homestead on the pretense that he wanted a cheaper one, which he would purchase, and use the rest of the money realized on the sale of the first one to go into business with, and accepted the note of the grantee for such purchase money, who in five days thereafter conveyed the property to the husband's mother for the same price, receiving in payment his said note, the mother giving her note to the son in lieu thereof, who shortly thereafter abandoned his wife,—

*Held,* that the transaction was fraudulent in its inception and execution, and that said deed should be set aside, and the wife restored to her rights.

Appeal from Wayne. (Jennison, J.) Argued November 11, 1886. Decided January 20, 1887.

Bill filed to set aside a deed by a wife of her homestead for fraud. Complainant appeals. Decree reversed, and one entered granting relief prayed for. The facts are stated in the opinion.

*John W. McGrath* (*Alexander D. Fowler,* of counsel), for complainant:

Complainant has made a case entitling her to the relief sought: *Bear v. Stahl,* 61 Mich. 203.

*Hamilton G. Howard,* for defendants:

Married women may be estopped by their deliberate conduct as well as any one else: *Norton v. Nichols,* 35 Mich. 150.

Fraud is not to be lightly inferred, but must be clearly proved: *Campau v. Lafferty,* 50 Mich. 117.

---

[1] See *Stanton v. Hitchcock, ante,* 316.

SHERWOOD, J.   The bill in this case is filed for the pur-
pose of requiring the defendant Dorothea Spiegel to convey
to William J. Spiegel lot 13, in Dr. Kiefer's resubdivision of
Van Dyke's section 2 of the A. Beaubien farm, between
Beaubien and St. Antoine streets, in the city of Detroit, and
asks that the deeds from said William J. Spiegel and wife to
defendant Oldekopff, and from him and wife to Dorothea
Spiegel, of the same property, may be decreed void, and that
an injunction issue restraining the said Dorothea Spiegel
from mortgaging or otherwise conveying to others, or exer-
cising any acts of ownership over, said lot.

The bill charges that defendant William J. Spiegel and
complainant were, on March 4, 1885, man and wife; that
William J. Spiegel was the owner of a house and lot on
Montcalm street, Detroit, which was his homestead, and in
which Clara had inchoate dower; that on the fourth of
March, 1885, William, by misrepresentation and fraud, in-
duced Clara to join with him in a deed of this property to
defendant George Oldekopff; that within a few days there-
after Oldekopff and wife conveyed the property to defendant
Dorothea Spiegel, who is the mother of William J. Spiegel;
that the conveyances were without consideration, and oper-
ated as a fraud upon complainant; that both George Olde-
kopff and Dorothea Spiegel were parties to the fraud; and
prays that these deeds may be set aside, and complainant's
rights restored.

The answer admits the conveyances, denies the fraud, and
claims that there was a good consideration in each instance.

Among the witnesses sworn were the complainant, and
defendants Dorothea Spiegel and George Oldekopff.   The
defendant William J. Spiegel was not sworn.   The cause
was heard in the Wayne circuit, before Judge Jennison, who
dismissed the complainant's bill, with costs.

The defendant William J. Spiegel was a widower, with
three children, one an infant, one four, and the oldest seven,

years old, when, on December 2, 1884, he married the complainant, who lived at that time in her father's house, at 194 Leland street, Detroit, where she was married. He owned, as his homestead, lot 13, hereinbefore described, but which at that time was rented out until the next April. He also owned city lot 71, of Hibbard & Baker's subdivision of lot 4, etc., in Detroit. After their marriage they resided temporarily at the homestead of the wife's father, in the city, expecting to return to their homestead on lot 13 when the tenant's term expired. They lived, with the children, in her father's house until about the fourth of March, 1885, using a part of their furniture where they lived, and the remainder remaining at the house of his father. William J. Spiegel's homestead was situated on Montcalm street.

During the winter the wife was in poor health, and William complained much of the poor outfit her father gave her, and of the great expense the wife and children were bringing upon him; that it cost him five dollars per week to support his wife and three children; and in all his complaints it appears that he had much sympathy from his mother, who occasionally gave some very unpleasant expressions of her feelings upon the subject. The testimony in the case shows that, as early as February, he was found making such complaints as above, saying he could not live with her, and intended to make an effort at an early day to obtain a divorce.

His property, so far as the record shows, aside from household goods, consisted of the two lots mentioned, one being the homestead, worth at least $3,500; and, I think, with a view, as the evidence clearly shows, of divesting his wife of all her interest in said property preparatory to taking divorce proceedings, he transferred to his mother, through the agency of Mr. Oldekopff, an old friend of the family, the homestead, and obtained the signature of his wife thereto, under the false pretense that he wanted to get away from the locality of his mother, because she made him so much trouble,

and buy a homestead on Fourteenth street which was not worth so much, and would do so, and would use the rest of his money to go into business with, and that he then had a good opportunity to sell the property to Oldekopff, who would pay in ten days for the same. At the same time he obtained her name to a deed to his father, without knowing what it was until after she had signed it, conveying the other lot.

These conveyances were both signed on the same occasion, on the fourth day of March, 1885, and in five days thereafter Oldekopff and wife conveyed the property to Dorothea, the mother of William. Oldekopff says he gave to William his note, due in 10 days, for the property, and that when he sold it to Dorothea it was for the same price he agreed to pay for it, and received his pay from Dorothea by taking back his own note, and that Dorothea substituted her note to William for the same amount, due in five years, with interest at 5 per cent. per annum. This business, the testimony shows, was consummated on the thirteenth day of March, 1885, and on the next day Dorothea's deed was duly recorded. It nowhere appears that either Oldekopff or Dorothea paid a dollar in money for the property.

On the fourteenth, William told his wife that it was her fault that he had to sell his property, and wanted her to go to her home on a visit; that he was going to Ann Arbor to play for the students (he was a musician, and when in the city earned from three dollars to five dollars per night). On the fifteenth he directed his wife to take the children to his mother's, and on that day he met his father-in-law; told him that his wife needed too much money; that she wanted five dollars per week; that he had just got through having trouble with his first wife, she being sick, and that he had the same trouble again, and he was not satisfied; denied that his property had been purchased by his mother. He told his wife he had got his money from Oldekopff on his note, and had left it at Stoll's, the man who drew the deed,

and had taken his bank-book away for fear it would burn up; that he was going to board with his mother, and, when she said to him she did not want to go there, said he did not care, he should go there, and she could go "where she liked." She then went to William's mother's, and asked her if they were going to board there; and Mrs. Spiegel replied, "no," but she would keep the children; and she then told the wife of William that she had bought the homestead, and said, "William is going backwards instead of forwards." On that night William packed up his house furniture. The next day he went to Ann Arbor, and on his return in the evening said to his wife she should not go with him "any more." The complainant commenced this suit the same day.

Thus it will be seen that, within four days after William's mother received the title of the homestead, he had abandoned his home, packed up his goods, and took his children to his mother's to live, made her house his abiding place, and discarded his wife. After a careful reading of this record, and giving to all the circumstances and testimony bearing upon the questions at issue due consideration, I cannot avoid the conclusion that a gross fraud was attempted by William with the intention to deprive his wife of her homestead and dower interest in said lot 13, and that such purpose was within the knowledge of the other defendants.

I quite agree with the learned counsel for the complainant that "the transaction was fraudulent in its inception and in its execution, and that it has resulted in a fraud upon the complainant," greatly to her injury. Very much of the complainant's testimony is uncontradicted, and the other testimony in the case, and the circumstances disclosed, are of the most convincing character, and are not limited to inferences and presumptions not rising to the plane of evidence. I have not quoted the testimony to any great extent,

but have contented myself rather in giving herein the conclusions I have reached on a review of the case as presented by the record.

I think the decree at the circuit should be reversed, and a decree entered in this Court in accordance with the prayer of the bill, with costs of both courts.

The other Justices concurred.